CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

September 16, 2024

LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **POLITO'S CHRISTMAS WHOLESALE LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:23CV00027 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **BLUE MOUNTAIN CHRISTMAS TREE FARM, AMANDA SANCHEZ DIAZ, and ENRIQUE SANCHEZ GARCIA,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **AMANDA SANCHEZ DIAZ d/b/a BLUE MOUNTAIN CHRISTMAS TREE FARM,** | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **POLITO'S CHRISTMAS WHOLESALE LLC, JOSEPH P. POLITO, and KEVIN FLYNN,** | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

*Paul G. Beers,* GLENN, FELDMANN, DARBY & GOODLATTE, *Roanoke, Virginia, for Plaintiff and Counterclaim Defendants Joseph P. Polito and Polito's Christmas Wholesale LLC; Michael C. Whitticar,* NOVA IP LAW, PLLC, *Warrenton, Virginia, for Defendants and Counterclaim Plaintiff; Jeremy E. Carroll,* SPILMAN, THOMAS & BATTLE, PLLC, *Roanoke, Virginia, for Counterclaim Defendant Kevin Flynn.*

In this diversity action, plaintiff Polito's Christmas Wholesale LLC (Polito's Wholesale) contends that defendants Blue Mountain Christmas Tree Farm (Blue Mountain), Amanda Sanchez Diaz (Ms. Sanchez Diaz), and Enrique Sanchez Garcia (Mr. Sanchez Garcia), both doing business as Blue Mountain, have breached a contract for the purchase of cut Fraser Fir Christmas trees and related goods.  In response, defendant Ms. Sanchez Diaz, doing business as Blue Mountain, has asserted a Counterclaim alleging breach of the same contract as well as fraud in its inducement against Polito's Wholesale, and two new parties, Joseph Polito (Mr. Polito), the sole owner and member of Polito's Wholesale, and Kevin Flynn (Mr. Flynn), an agent of Polito's Wholesale and Mr. Polito.[1]  The counterclaim defendants have filed motions to dismiss the Counterclaim. Fed. R. Civ. P. 12(b)(6). The motions have been fully briefed and are ripe for decision.  For the reasons that follow, I will deny the motions.

## I.   FACTS.

Because Federal Rule of Civil Procedure 12(b) applies equally to claims and counterclaims, "a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Xerox Corp. v. Lantronix, Inc.*, 342 F. Supp. 3d 362, 367 (W.D.N.Y. 2018).  Accordingly, I must accept the allegations

---

[1]   As long as an existing party is named, a counterclaim may add new parties involved in the same transaction or occurrence. *Philadelphia Indem. Ins. Co. v. Associated Univs., Inc.* No. 3:20cv47, 2022 WL 2339475, at *2 (W.D. Va. June 28, 2022).

in the Counterclaim as true and view them in the light most favorable to the counterclaim plaintiff. *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 189 (4th Cir. 2002). The Counterclaim alleges the following facts.

Polito's Wholesale is a wholesale seller of Christmas-related goods and Mr. Polito is its sole owner and member. On or around August 20, 2022, counterclaim defendant Flynn traveled to Virginia, acting as an agent and representative of Mr. Polito and Polito's Wholesale, met with Ms. Sanchez Diaz and Mr. Sanchez Garcia. Mr. Flynn promised to purchase Christmas trees and other Christmas-related goods such as wreaths, garlands, and table-toppers, both for himself and for Mr. Polito and Polito's Wholesale. Mr. Flynn told Ms. Sanchez Diaz and Mr. Sanchez Garcia that he would pick up the goods. He also represented that the goods he had ordered for himself, Mr. Polito, and Polito's Wholesale would be paid for together. Mr. Flynn made a partial deposit of $69,000 to reserve the items but the payment was not processed due to insufficient funds. He then successfully made a wire transfer in the same amount. Mr. Flynn continued to travel to Virginia several times between August and December of 2022 to transact business with Ms. Sanchez Diaz and her agents. In addition, on or around September 22, October 4, November 9, and November 15 of 2022, Polito's Wholesale, through Mr. Polito, agreed to purchase Christmas trees and Christmas-related perishable goods from Ms. Sanchez Diaz and pay for them at or before pickup. At an unspecified time, Mr. Polito and Polito's

Wholesale failed to pay for an order of wreaths, table-toppers, and garlands that they had picked up.

Ms. Sanchez Diaz alleges that Mr. Flynn, Mr. Polito, and Polito's Wholesale did not reveal that Mr. Polito and Polito's Wholesale were under-capitalized and insolvent and that both Mr. Polito and Polito's Wholesale had cheated other Christmas tree suppliers by picking up orders without paying for them. Ms. Sanchez Diaz also alleges that Mr. Flynn, Mr. Polito, and Polito's Wholesale knew that she would not have set aside perishable goods and entered into an contract had she known about Mr. Polito and Polito Wholesale's financial issues and lack of intent to perform. The terms of the contract required Mr. Polito and Polito's Wholesale to pay for the goods prior to having them loaded onto their trucks. However, Mr. Polito and Polito's Wholesale were unable to pay for their full orders in mid-November, and Ms. Sanchez Diaz was left with cut or harvested goods that had not been paid for.

Ms. Sanchez Diaz brings claims for breach of contract (Count I) against Mr. Polito and Polito's Wholesale and actual and promissory fraud (Count II)[2] and constructive fraud (Count III) against all three counterclaim defendants. She seeks

---

[2] "[P]romissory fraud is a subspecies of fraud and it may lie where a defendant fraudulently induces the plaintiff to enter a contract." *Aton v. Carefirst of Md., Inc.*, No. DKC 20-3170, 2021 WL 1856622, at *10 n.9 (D. Md. May 10, 2021) (internal quotation marks and citation omitted).

compensatory and punitive damages, as well as attorney's fees, jointly and severally against each counterclaim defendant.  Mr. Polito and Polito's Wholesale have filed a Motion to Dismiss seeking to dismiss Mr. Polito as a party, to dismiss Counts II and III of the Counterclaim, and to dismiss the requests for punitive damages and attorney's fees.  Mr. Flynn has separately filed an Amended Motion to Dismiss, seeking to dismiss Counts II and III and the requests for punitive damages and attorney's fees.

## II.   STANDARD OF REVIEW.

Since a counterclaim is a claim for affirmative relief, the standard imposed by the Supreme Court in *Ashcroft v. Iqbal* applies.  556 U.S. 662, 678 (2009).  To survive a 12(b)(6) motion to dismiss, the counterclaims "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III.   DISCUSSION.

### A. Motion to Dismiss Mr. Polito.

It is first contended that Mr. Polito is shielded from personal liability because Polito's Wholesale is an LLC and because Ms. Sanchez Diaz fails to make more

than conclusory allegations that Mr. Polito is Polito's Wholesale's alter ego. The counterclaim defendants also cite a Fourth Circuit case stating that a plaintiff may not institute a veil piercing suit until the plaintiff has obtained a judgment against the defendant corporation. In response, Ms. Sanchez Diaz argues that Mr. Polito opened himself to liability by personally ordering and purchasing goods without the intent to pay and without disclosing Mr. Polito and Polito's Wholesale's economic issues.

There are two separate legal theories under which Mr. Polito could be held liable, and Ms. Sanchez Diaz alleges both. The first is piercing the corporate veil and the second is if Mr. Polito personally participated in a tort.

Piercing the corporate veil "permits a court to render an individual liable in a judgment against a business entity in which the individual has an interest[.]" *Rothy's, Inc. v. JKM Techs., LLC*, 360 F. Supp. 3d 373, 378 (W.D. Va. 2018). However, "a court's decision to pierce the corporate veil is an extraordinary act to be taken only when necessary to promote justice." *Id.* (citation and internal quotation marks omitted). Mr. Polito and Polito's Wholesale mistake the holding of *Bennett v. Garner* as barring veil piercing in this case. 913 F.3d 436 (4th Cir. 2019). In *Bennett*, the court held that the plaintiff's second action to pierce the corporate veil was not precluded by res judicata because the plaintiff could not have brought his veil piercing claim in the first action. *Id.* at 443. Additionally, piercing the

corporate veil is a remedy, not a cause of action. *Sport of Bus., LLC v. Sarah Beth Yoga, LLC*, No. 7:21-CV-00142, 2022 WL 848066, at \*5 (W.D. Va. Mar. 21, 2022) (citation omitted). A Rule 12(b)(6) motion may only be used to dismiss claims, not remedies. *Id.* Therefore, Mr. Polito must contest the requested remedy to pierce the corporate veil at a later point in the case.

Second, Mr. Polito may be held personally liable as a participant in a tort. "A corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort." *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978). I find that Ms. Sanchez Diaz has sufficiently alleged that Mr. Polito personally participated in the fraud described in Counts II and III. She states that Mr. Polito agreed to purchase and promised to pay for Christmas trees and related perishables from her. During the course of Mr. Polito's interactions with Ms. Sanchez Diaz, he did not disclose his or Polito's Wholesale's insolvency, undercapitalization, or the fact that they did not intend to pay for some of the ordered goods. The Motion to Dismiss Mr. Polito as a defendant will therefore be denied.

B. Motions to Dismiss Counts II and III.

Mr. Polito and Polito's Wholesale argue that Ms. Sanchez Diaz's claims for actual and promissory fraud (Count II) and constructive fraud (Count III) are barred by Virginia's source of duty and economic loss rules. Because jurisdiction in this

case is founded on diversity of citizenship, state substantive law applies. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

"Virginia's source-of-duty rule delineates the boundary between tort and contract claims to protect against turning every breach of contract into a tort." *Harrell v. DeLuca*, 97 F.4th 180, 189 (4th Cir. 2024) (citation omitted). Under Virginia law, a party may only recover in tort if "the duty tortiously or negligently breached [is] a common law duty, not one existing between the parties solely by virtue of the contract." *Dunn Const. Co. v. Cloney,* 682 S.E.2d 943, 946 (Va. 2009) (citations omitted). "In determining whether a cause of action sounds in tort, contract, or both, the source of the duty violated must be ascertained." *MCR Fed., LLC v. JB&A, Inc.*, 808 S.E.2d 186, 192 (Va. 2017).

The counterclaim defendants argue that Polito's Wholesale's duty to make payments for the Christmas trees and seasonal goods stems from Polito's Wholesale's contract with Blue Mountain, which contract bars the counterclaim plaintiff's claims for fraud. They also argue that an unfulfilled promise to pay or perform in the future cannot support claims for actual or constructive fraud. In her response, Ms. Sanchez Diaz fails to directly address the source of duty rule. Nevertheless, I find that her fraud claims are not barred by the rule.

"Virginia law distinguishes between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word.

-8-

The former is fraud, the latter is breach of contract." *Harrell*, 97 F.4th at 190. Here, the counterclaim plaintiff argues that Mr. Flynn, Mr. Polito, and Polito's Wholesale failed to inform her of Mr. Polito and Polito's Wholesale's insolvency and undercapitalization prior to when the transactions were entered into. The counterclaim plaintiff's fraud claims are based on a misrepresentation or omission of present fact, not a breach of contractual duty.

The related economic loss rule holds that when the "bargained-for level of quality" in a contract is not met, "the law of contracts provides the sole remedy." *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 58 (Va. 1988). Economic loss has also been defined as "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits [without any claim of] personal or property injury as well as diminution in value due to inferior quality or failure to work as expected." *Va. Transformer Corp. v. P.D. George Co.*, 932 F. Supp. 156, 162 (W.D. Va. 1996) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982)) (cleaned up).

Mr. Polito and Polito's Wholesale argue that the counterclaim plaintiff is attempting to recover for economic losses by claiming that Mr. Polito and Polito's Wholesale failed to make contractually required payments. In response, the Ms. Sanchez Diaz argues that the economic loss rule does not bar claims for fraud in the inducement of contracts. She contends that Polito and Polito's Wholesale

fraudulently induced multiple transactions by failing to reveal their undercapitalization and insolvency.

For similar reasons to those above, I find that the economic loss rule does not bar Ms. Sanchez Diaz's fraud claims. "[T]he economic loss rule does not preclude a fraud claim where the fraud is based on misrepresentations that preceded the contract." *S. Coal Sales Corp. v. Xcoal Energy & Res.*, No. 7:12-CV-00265-JCT, 2013 WL 417789, at *4 (W.D. Va. Feb. 1, 2013). Fraud in the inducement, as argued by the counterclaim plaintiff, is an actionable claim.

Lastly, when a party alleges fraud, as Ms. Sanchez Diaz does in this case, the party "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The circumstances required to be pled are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (citation omitted). The purpose of the particularity requirement set forth in Rule 9(b) is to "provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation." *Id.* (citation omitted).

However, in cases involving alleged fraud by omission or concealment, "it is well-nigh impossible for plaintiffs to plead all the necessary facts with particularity, given that those facts will often be in the sole possession of the defendant." *Corder v. Antero Res. Corp.*, 57 F.4th 384, 402 (4th Cir. 2023).  Therefore, plaintiffs who are alleging fraud by omission or concealment "may partly rely on information and belief without running afoul of Rule 9(b)." *Id.*  This relaxed standard still requires the plaintiff to provide sufficient factual matter to state a plausible claim for relief. *Id.*  The court should hesitate to dismiss a complaint under Rule 9(b) if it is satisfied that (1) the defendant has been made aware of the particular circumstances for which they will have to prepare a defense at trial and (2) the plaintiff has substantial prediscovery evidence of those facts.  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

The following facts are evident from the Counterclaim:

- On or about August 20, 2022, Mr. Flynn traveled to Virginia and entered into an agreement with Ms. Sanchez Diaz on behalf of himself, Mr. Polito, and Polito's Wholesale;

- During this interaction, Mr. Flynn failed to reveal to Ms. Sanchez Diaz that Mr. Polito and Polito's Wholesale were undercapitalized and insolvent;

- On or about September 22, October 4, November 9, and November 15 of 2022, Polito's Wholesale, acting through Mr. Polito, agreed to purchase Christmas-related perishable goods from Ms. Sanchez Diaz;

- During this interaction, Mr. Polito and Polito's Wholesale failed to reveal to Ms. Sanchez Diaz that Mr. Polito and Polito's Wholesale were undercapitalized and insolvent;

- Mr. Flynn, Mr. Polito, and Polito's Wholesale were aware that Ms. Sanchez Diaz would have found Polito's Wholesale and Polito's insolvency and undercapitalization material to the transactions;

- Mr. Flynn, Mr. Polito, and Polito's Wholesale were aware that Mr. Polito and Polito's Wholesale had cheated other Christmas tree suppliers by placing and picking up orders without paying for them;

- Mr. Flynn, Mr. Polito, and Polito's Wholesale made promises to Ms. Sanchez Diaz without the intent to perform; and

- Ms. Sanchez Diaz cut, obtained, and set aside trees and related goods in performance of the contract based on the counterclaim defendants' representations.

I find that Ms. Sanchez Diaz has sufficiently pleaded time, place, identity, and material omissions.  Although it is unclear if she entered into agreements after the September 22, October 4, November 9, and November 15 interactions with Mr.

Polito and Polito's Wholesale, the allegations in the Complaint plausibly establish fraud in the inducement by Mr. Flynn. Furthermore, as the timeframe of the alleged fraud is short, spanning from August to November of 2022, and the counterclaim relates to the transactions alleged in their Complaint, the counterclaim defendants have fair notice of the claims against them and the factual ground upon which they are based. Accordingly, I will deny Mr. Polito's and Polito's Wholesale's Motion to Dismiss Counts II and III of the Counterclaim.

Counterclaim defendant Flynn offers nearly identical arguments as Mr. Polito and Polito's Wholesale in his motion to dismiss. For the reasons stated above, Mr. Flynn's Amended Motion to Dismiss counts II and III will be denied.

## C. Punitive Damages and Attorney's Fees.

Lastly, Mr. Flynn, Mr. Polito, and Polito's Wholesale challenge the sufficiency of the counterclaim plaintiff's claim for punitive damages and attorney's fees. Ms. Sanchez Diaz requests punitive damages of $350,000 per counterclaim defendant. In their motions to dismiss, the counterclaim defendants argue that the Virginia punitive damages statutory cap of $350,000, Va. Code Ann. § 8.01-38.1, applies on a per-lawsuit basis and not on a per-defendant basis. In response, Ms. Sanchez Diaz contends that the punitive damages cap should be applied only at the judgment stage of litigation and that a determination now is premature. The counterclaim defendants also argue that the claim for attorney's fees is barred by the

American Rule, which requires each litigant to pay their own attorney's fees in the absence of a statute or contractual provision that would shift the burden of payment to the unsuccessful party.  Ms. Sanchez Diaz responds that under the holding of *Prospect Development Company v. Bershader*, attorney's fees may be discretionarily awarded to a defrauded party.  515 S.E.2d 291, 301 (Va. 1999).

Rule 12(b)(6) may not be used "to dismiss a portion of relief sought or a specific remedy." *Meeks v. Emiabata*, No. 7:14CV00534, 2015 WL 1636800, at *2 (W.D. Va. Apr. 13, 2015).  Rather, a 12(b)(6) motion must be used to dismiss a claim in its entirety.  *See Downs v. Winchester Med. Ctr.*, 21 F. Supp. 3d 615, 620 (W.D. Va. 2014) ("[T]he question of punitive damages is not properly addressed on a motion to dismiss."); *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 629 (W.D. Va. 2014) (finding that it was improper for defendants to contest claims for attorney's fees, among other forms of relief, on a Rule 12(b)(6) motion).

"[T]he nature of the relief included in the demand for judgment is immaterial to the question of whether a complaint adequately states a claim upon which relief can be granted." *Charles*, 12 F. Supp. 3d at 630.  Therefore, the motions to dismiss the counterclaim plaintiff's request for punitive damages and attorney's fees will be denied.  If appropriate, the counterclaim defendants may challenge these forms of

relief at a later point.  To be clear, nothing in this opinion should be construed as entitling Ms. Sanchez Diaz to punitive damages and attorney's fees.[3]

IV.   CONCLUSION.

For the foregoing reasons, Mr. Polito's and Polito's Wholesale's Motion to Dismiss, ECF No. 30, and Mr. Flynn's Amended Motion to Dismiss, ECF No. 38, are DENIED.

It is so **ORDERED.**

ENTER:   September 15, 2024

/s/  JAMES P. JONES
Senior United States District Judge

---

[3]   It has been held that the Virginia punitive damages cap cannot be applied on a per-defendant basis, as the counterclaim plaintiff requests.  *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 237 (4th Cir. 2000) The statute's "plain meaning dictates that the cap on punitive damage awards applies to the action as a whole, and not to each defendant.").  However, it does apply on a per-plaintiff basis.  *Sines v. Hill*, 106 F.4th 341, 354 (4th Cir. 2024).